```
                    `UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

MARK RAMOS,
      Petitioner,

              v.                          CR. No. 01-10369-PBS

UNITED STATES OF AMERICA,
      Respondent.


                       MEMORANDUM AND ORDER
                          March 30, 2012

SARIS, D.J.

Petitioner Mark Ramos, who is currently serving a 188 month sentence at the Federal Correctional Institution in Sandstone, Minnesota, filed his self-prepared motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket No. 362) on October 22, 2008.[1]  For the reasons set forth below, Ramos' motion to supplement his pro se motion is denied and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

                            BACKGROUND

In an indictment dated October 17, 2001, and a superseding indictment dated October 10, 2002, Mr. Ramos was charged with one count of conspiracy to distribute and to possess with intent to distribute 100 or more grams of heroin in violation of 21 U.S.C. § 846, and numerous counts of distribution and possession of

---

[1]The Clerk's Office opened the Section 2255 matter as a new civil case, Ramos v. United States, C.A. 08-11810-PBS, for administrative purposes.

heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting, in violation of 18 U.S.C. § 2, and maintaining a place for the purpose of storing and distributing controlled substances, in violation of 21 U.S.C. § 856 and aiding and abetting, in violation of 18 U.S.C. § 2 (Count 18); and with criminal forfeiture pursuant to 21 U.S.C. § 853.

Mr. Ramos was initially represented by CJA attorney Thomas Ford. In April 2002, Mr. Ramos retained attorney William Korman of Prince, Lobel, Glovsky & Tye, LLP.[2] At that time, attorney Ford sought to withdraw. See 4/23/2002 Motion, Docket No. 67.

On November 12, 2002, the day his trial was to commence, Mr. Ramos changed his plea in open court and pled guilty to all twelve counts in which he was charged. See Docket. Mr. Ramos was represented by attorney Korman, his privately retained counsel.

At that time, the Court held a plea colloquy with Mr. Ramos. The Government stated the maximum penalties as well as the facts it would prove at trial.

The Government recited that its evidence would prove that Mr. Ramos was the "leader and organizer" of a organization that distributed heroin in New Bedford, MA. See Plea Tr. 9/12/02, Docket No. 211. The government recounted a series of controlled

---

[2]After a notice of appeal was filed, Attorney Korman sought to withdraw on September 24, 2003. See Docket No. 276.

purchases of heroin from Mr. Ramos which included the price and approximate amount of heroin.[3]  Id.  The Government described how the evidence would show that during some of these transactions, Mr. Ramos directed the cooperating witness to go to other locations where Mr. Ramos directed others to distribute the heroin to the cooperating witness.  Id. at p. 18.  The government stated that because the plea came upon the first day of trial, it would agree to a two-level reduction for acceptance of responsibility under 3E1.1(a).  Id. at p. 6-7.  However, the Government also stated that it would not move for a third point under 3E1.1(b).  Id.

During the plea colloquy, the Court advised Mr. Ramos of the statutory mandatory minimum penalty of ten years of incarceration and the maximum penalty of life imprisonment.  Id. at p. 6.  The Court explained that an employee of the Probation Office would interview him and prepare a Presentence Report ("PSR") that would, among other things, calculate a sentencing guideline range.  Id. at 8.  The Court advised Mr. Ramos that he could, through counsel, object to any of the findings of the PSR and

---

[3]Count 4: 7/21/00, 239 bags for $800; Count 5: 8/4/00, 470 bags for $1,600; Count 6: 8/8/00, 30 bags; Count 8: 8/30/00, 500 bags for $1,600; Count 10: 8/27/00, 500 bags, $1,120; Count 11: 8/25/00, 499 bags, $1,600; Count 12: 12/19/00, 250 bags for $800; Count 14: 2/28/01, 100 bags for $320; Count 15: 6/8/01 250 bags for $800; Count 16: 7/5/01, 250 bags for $800; Count 17: 9/27/01, 499 bags for $1,400.  See Plea Tr. 9/12/02, Docket No. 211, at 12-23.

3

request a hearing.  <u>Id.</u>

There was no plea agreement and the Court did not accept a guilty plea on Count 18.[4]  <u>See</u> Docket.  The sentencing was scheduled for February 3, 2003.  <u>See</u> Docket.

The Probation Office issued the PSR which held Mr. Ramos accountable for the heroin he sold to the cooperating witness as well as quantities of heroin seized from others working on Mr. Ramos' behalf and amounts attributed to Mr. Ramos by individuals who provided information during the investigation.  The PSR determined that his Guideline Sentencing Range was 188 to 235 months (after a four-level aggravated role adjustment and a three-level reduction for acceptance of responsibility).

Defense counsel moved for downward departure, objected to the use of hearsay statements, to the quantity of heroin for which the defendant was found responsible and for the four-level leadership enhancement role.  <u>See</u> 01/29/2004 Motion, Docket No. 242.  He also objected to the leadership enhancement recommended by the Probation Department in the Presentence Report.

At the sentencing hearing on February 3, 2003, defense counsel argued that a lower quantity of heroin should be attributed to Mr. Ramos because some of the quantity was based on unsubstantiated and self-serving statements.  The government

---

[4]The government subsequently dismissed Count 18 on February 6, 2003.

4

recommended a sentence of 210 months.  The Court found Mr. Ramos responsible for one to three kilograms of heroin and a criminal history category 4; a calculated GSR at 188 to 235 months.  Defense counsel sought a downward departure arguing that the drug quantity was increased by the inclusion of uncharged relevant conduct.  In response, the district court sentenced the defendant to 188 months in prison.

On February 7, 2003, Mr. Ramos appealed the sentence.  Attorney Barry Wilson represented him on the direct appeal.  Mr. Ramos' sentence was vacated in light of United States v. Booker, 125 S. Ct. 738 (2005) and United States v. Antonakopoulos, 399 F. 3d 68 (1st Cir. 2005), and the case was remanded for further sentencing proceedings.  See Ramos v. United States, No. 03-1237 1st Cir. 2005).  Because Mr. Ramos was to be resentenced under Booker, the First Circuit did not address issues relating to counsel's performance at sentencing.  Id.

During the resentencing hearings, Mr. Ramos was represented by attorney Barry Wilson.  Attorney Wilson argued that, under Booker, the court was not allowed to calculate drug quantities at sentencing beyond those admitted to by Mr. Ramos.  See Docket No. 334.  He also argued that the drug quantities determined by the Court were incorrect and that Mr. Ramos was rendered ineffective assistance because the lawyer at the first sentencing did not request an evidentiary hearing on drug quantities.  Id.  A

sentencing hearing was held on January 17, 2006, which was continued to February 6, 2006. See Docket. On January 30, 2006, attorney Wilson filed a Second Memorandum in Support of Reduction in Sentence. See Docket No. 338. Counsel argued that the appropriate sentence would be 120 months.

After holding several hearings, this Court concluded, based upon the PSR, that the drug weight attributable to Ramos was between one and three kilograms. Although defense counsel sought additional time to show that earlier convictions were vacated, defendant's criminal history remained the same because the earlier convictions had not been overturned. Moreover, this Court explained that it balanced all the 3553(a) factors, considered Ramos' conduct as well as his childhood. Although unlikely to downwardly depart, the Court expressed a desire to go to the low end of the GSR. Mr. Ramos was sentenced to a term of incarceration of 188 months.

Ramos, through counsel, appealed his 2/14/06 sentence to the First Circuit. See 2/14/06 Notice of Appeal, Docket No. 340. Counsel argued that the sentence was unreasonable because the court relied too much on the guidelines and not enough on the Section 3553 factors; that the criminal history category was overstated; that post-offense rehabilitation should have mitigated his sentence; that the court should have given more weight to his troubled childhood; and the sentence far exceeded

6

that of the other individuals involved in the conspiracy.  On July 25, 2007, the First Circuit granted the government's motion for summary disposition and upheld the 188 month sentence.

Ramos' subsequent pro se motion for resentencing was denied.  <u>See</u> 9/18/07 Electronic Order.  Ramos filed a pro se Notice of Appeal.  <u>See</u> Docket No. 359.  This appeal was dismissed on February 6, 2009, by the First Circuit for lack of diligent prosecution [Ramos failed to file a brief].  <u>See</u> <u>Ramos v. United States</u>, No. 07-2574 (1st Cir. Feb. 6, 2009).

On September 8, 2011, Ramos filed a motion requesting permission to supplement his Section 2255 motion.  <u>See</u> Docket No. 375.

<u>DISCUSSION</u>

I.  <u>Standard of Review</u>

Section 2255 of Title 28 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.  28 U.S.C. § 2255(a).  Section 2255(b) requires service of a motion on the government and a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

The grounds justifying relief under § 2255 are limited.  A court may grant such relief only if it finds a lack of

jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185 (1979) ("an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'") (quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

An ineffective assistance of counsel claim requires the petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that counsel's performance probably resulted in prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In order to satisfy the 'deficient performance' prong, a movant must show that his trial counsel's representation fell below an objective standard of reasonableness. Id. Counsel's assistance is subjected to a "highly deferential review," whereby counsel is given " 'wide latitude in deciding how best to represent a client' ... and benefits from a strong presumption that he or she rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions." Sleeper v. Spencer, 510 F.3d 32, 38-39 (1st Cir. 2007) (citations omitted).

Additionally, Petitioner must carry the burden of showing

that his attorneys' errors were "sufficient to undermine confidence in the outcome ... [not simply] that the errors had some conceivable effect on the outcome." <u>Gonzales-Soberal v. United States</u>, 244 F.3d 273, 278 (1st Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 693-94) (quotations omitted).

II.  <u>Motion to "Supplement" Claims</u>

On September 8, 2011, Mr. Ramos filed a motion for leave to file "supplemental" claims.  <u>See</u> Docket No. 375.  Four months later, on January 9, 2012, Mr. Ramos filed a request that the Court rule on his previously filed motion to supplement.  <u>See</u> Docket No. 376.  Apparently, Mr. Ramos' attempt to serve his motion to supplement on the government was unsuccessful because the certificate of service states that he served the Clerk of Court and not the Office of the United States Attorney.  <u>Id.</u>  There was no attempt to serve a copy of the January 9, 2012 filing on the government.  Because the Court finds that the motion should be denied, the government will not be provided with an opportunity to file a response.

A federal prisoner's efforts to amend his § 2255 motion are governed by Fed. R. Civ. P. 15.  <u>See</u> <u>United States v. Ciampi</u>, 419 F.3d 20, 23 (1st Cir. 2005).  Here, Mr. Ramos seeks "permission to supplement based on information that has been made available and proves a violation of his rights under both ineffective assistance of counsel and his rights under Due Process."  <u>See</u>

9

Pet'r's Mot. to Supp., Docket No. 375. However, Mr. Ramos fails to disclose the information. As such, his motion falls short of stating a factual basis or claim that would warrant relief.

   III. <u>Ramos' Section 2255 Claims</u>

   1.   <u>Trial Counsel</u>

Ramos argues that his attorney was ineffective when he advised him to enter guilty pleas to all of the charges against him without the benefit of a plea agreement. First, Ramos claims because his attorney was not prepared for trial, his lawyer counseled him to plead guilty. However, Ramos does not give any evidence to prove he was unprepared. The record reflects that prior to the date of trial, defense counsel filed proposed voir dire questions and filed two motions in limine. Ramos does not explain what else the lawyer should have done.

Second, Ramos argues that his attorney had not vigorously pursued a plea agreement prior trial even though his attorney intended to have the defendant plead guilty all along. By pleading guilty on the first day of trial, Ramos contends that this adversely affected his ability to seek an agreement for a lower drug quantity and role in the offense. Ramos contends that his attorney should have negotiated the drug amount as well as the leadership enhancement.

As the Supreme Court recognized, [i]n today's criminal justice system ..., the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." Missouri v. Frye, No. 10-444, 2012 WL 932020, *6, — S.Ct. ----,(Mar. 21, 2012). Criminal defendants "require effective counsel during plea negotiations." Id. at *7. However, defendants have "no right to be offered a plea ... nor a federal right that the judge accept it." Id. at *10 (citations omitted)(finding ineffective assistance of counsel when defense counsel failed to communicate a formal plea offer from the prosecutor). If no plea offer is made, the issue of ineffective assistance of counsel during plea bargaining would typically not be cognizable. Lafler v. Cooper, No. 10-209, 2012 WL 932019, *8, --- S.Ct. ----,(Mar. 21, 2012) (citing Frye) (favorable plea offer was reported to the client, but was rejected on the ineffective advice of counsel). The circumstances in Frye and Lafler are factually distinguishable because the government did not offer Ramos a plea agreement.

Ramos asserts that counsel should have negotiated away the leadership enhancement, but it takes two to tango. He does not explain why the government would have been a willing dance partner. There is no evidence that Ramos instructed his lawyer to negotiate a plea prior to trial, or that the government made an offer to negotiate, which he rebuffed.

11

Ramos complains that the drug quantity attributed to him in the PSR "was accepted in the face of counsel's substandard arguments to the contrary, again resulting in a longer sentence than the Petitioner would have received if he was properly represented in accordance with the Sixth Amendment." Def.'s Reply Mem. p 2, Docket No. 373. Even if counsel had demanded a hearing, there is little likelihood of a different outcome. The weight of the evidence, which was corroborated by various witnesses, demonstrated Mr. Ramos' role in the offense and his position at the top of the heroin distribution ring.

Ramos contends that he was "completely unaware of his true sentencing exposure and the consequences of the guilty plea due to the improper pressure applied by counsel and the expedience of the plea process itself." Def.'s Reply Mem. p. 2, Docket No. 373. Ramos states that had he known that his guilty plea would have subjected him to a sentencing range of 188-235 months, he would not have agreed to plead guilty without the benefit of a plea agreement and would have insisted instead on going to trial. Def.'s Memo., Docket No. 364.

In the colloquy this Court clearly informed Ramos of the minimum and maximum penalties, <u>see</u> Plea Tr. 9/12/02, Docket No. 211, and that probation would calculate the sentencing guideline range. Finally, Ramos asserts that he was misinformed about how much time he would face. Nothing in the record indicates that

12

Ramos' plea was anything but knowing, intelligent and voluntary.

2. Appellate Counsel

Ramos complains that appellate counsel was ineffective because he failed to challenge on appeal the trial court's "denial of his downward departure motion and the overruled objections to the unsupported drug quantity." Def.'s Reply Mem. p 3, Docket No. 373. Ramos argues that if appellate counsel had raised these issues on appeal, "the First Circuit would have had no choice but to revisit the issues and ultimately find in favor of Petitioner." Id. Ramos also complains that appellate counsel only presented two ineffective assistance of counsel claims, and that those two claims had no merit on direct appeal. Def.'s Reply Mem. p 8, Docket No. 373.

As noted by the government in it's opposition, these claims are without merit, as the record clearly shows that appellate counsel made many viable arguments on appeal and specifically requested downward departure. See Otero-Rivera v. United States, 494 F.3d 900, 901 (court found that claims easily repudiated by the record lacked merit). However, the arguments failed.

IV. Request for Evidentiary Hearing

Mr. Ramos seeks an evidentiary hearing on his Section 2255 claims. He bears the burden of establishing the need for an evidentiary hearing. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (citing United States v. DiCarlo, 575 F.2d 952,

13

954 (1st Cir.) cert. denied 439 U.S. 834 (1978)). A hearing on Ramos' motion is not required in this case. A hearing would be required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts, 28 U.S.C. § 2255. "[A]n evidentiary hearing is not necessary when a 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." DiCarlo, 575 F. 2d at 954.

### ORDER

1. The motion to supplement is DENIED; and

2. The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED.

/s/ Patti. B. Saris
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE